**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CARL WARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:19-cv-00484** |
| | ) | **Judge Aleta A. Trauger** |
| **NPAS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Before the court is plaintiff Carl Ward's post-appeal, post-judgment Motion to Alter or Amend Judgment under Rule 59 and/or for Relief from Judgment Under Rule 60 Seeking Leave to File Amended Complaint. (Doc. No. 84.) The defendant opposes the motion. (Doc. No. 86.) For the reasons set forth herein, the motion will be granted, insofar as the plaintiff will be permitted to amend his pleading. The court will set aside the entry of judgment and direct the Clerk to re-open this case and docket the proposed Second Amended Complaint in a separate entry.

## I.    PROCEDURAL HISTORY

Plaintiff Ward filed his First Amended Complaint (Doc. No. 15) on July 30, 2019, asserting a single claim against defendant NPAS, Inc. ("NPAS") for violation of the Fair Debt Collection Practices Act ("FDCPA"). Specifically, the plaintiff alleged that he is a "consumer" as defined by 15 U.S.C. § 1692a(3); NPAS is a "debt collector" as defined by § 1692a(6); and the alleged debts regarding which NPAS had communicated with him are "debts" as defined by § 1692a(5). Ward asserted that NPAS (1) violated § 1692d(6) by failing to make a meaningful disclosure of its identity when it placed telephone calls to him; (2) violated § 1692e(11) by failing to include notice

in its communications with him that it was attempting to collect a debt and that all information obtained would be used for that purpose; and (3) violated § 1692e(14) by failing to use its full "true name" in its voicemail messages, where it identified itself as "NPAS" rather than as "NPAS, Inc." (Doc. No. 15 ¶ 28.) The plaintiff sought actual and statutory damages arising from these violations, plus costs and attorney's fees.

In July 2020, the court granted NPAS's Motion for Summary Judgment on the sole ground raised by the motion: that NPAS was not a "debt collector" as that term is defined by the FDCPA, because the plaintiff's debt was not "in default" at the time it was referred to NPAS for servicing. (Doc. No. 60, at 13–16.) Ward appealed. On appeal, NPAS argued for the first time that the case should be dismissed, because Ward lacked Article III standing. The Sixth Circuit agreed, based on the Supreme Court's holding in the recently issued case of *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190, 2213 (2021). The appellate court vacated this court's order awarding summary judgment to NPAS without reaching the merits of the plaintiff's arguments and remanded with instructions that this case be dismissed without prejudice for lack of subject-matter jurisdiction. *Ward v. Nat'l Patient Account Servs. Sols., Inc.*, 9 F.4th 357, 363 (6th Cir. 2021).

Prior to issuance of the Mandate, Ward filed in this court a Notice of Intent to Move for Leave to Amend, but he did not file an actual motion at that time. (Doc. No. 74.) Following issuance of the Mandate (Doc. No. 75), the court entered an Order dismissing the case for lack of subject-matter jurisdiction and directing the Clerk to enter judgment. (Doc. No. 76.) Shortly thereafter, the plaintiff filed a Motion for Leave to File a Second Amended Complaint, which the court denied as moot, the case having been dismissed. (Doc. Nos. 78, 83.) The present Motion to Alter or Amend Judgment followed.

## II.    THE PRESENT MOTION

The plaintiff requests, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, that the court amend the order of dismissal without prejudice to specify that the dismissal is without prejudice *and* with leave to amend. (Doc. No. 84, at 1.) Alternatively, he seeks relief under Rule 60, identically requesting that the order of dismissal be amended to authorize him to file an amended complaint. The plaintiff argues that the entry of dismissal without leave to amend works a manifest injustice, because it is based solely on his failure to "*allege* a simple, discrete, evidenced, and undisputed fact (the date and time of a particular call) that the Sixth Circuit strongly implied would, if alleged, have rendered his Amended Complaint sufficient to create Article III standing." (Doc. No. 84, at 1.) He asserts that the proposed amendment would not be futile; his motion is not unduly delayed; his proposed amendment, made in good faith, would confer standing; and the defendant would not suffer undue prejudice if the plaintiff is permitted to file an amended pleading. He states that permitting him to amend in order to allege facts that would confer standing would mean that this court, thereafter, could promptly grant summary judgment again for the defendant. This procedural posture would not make amendment "futile," the plaintiff argues, because it would mean that he would have the ability to argue to the Sixth Circuit that the debts in question were "in default" and that the defendant qualifies as a "debt collector" and have that court consider the appeal on its merits.

In response, the defendant argues that the proposed amendment is futile, because the plaintiff's deposition testimony establishes that he did not suffer any cognizable injury; he unduly delayed in bringing his motion; and the denial of his motion would not work any manifest injustice. (Doc. No. 86.)

### III.    STANDARD OF REVIEW

Although the motion's title indicates that it seeks relief under Rule 59 or, alternatively, under Rule 60, the motion was filed within Rule 59(e)'s twenty-eight-day timeframe, and it does not actually invoke any of the grounds for relief made available by Rule 60. The court, therefore, construes the motion as a timely Rule 59(e) motion. In addition, however, although the motion's title does not expressly invoke Rule 15, and the plaintiff nominally seeks only to "amend" the judgment to include language granting "leave to amend," the plaintiff also expressly seeks leave to file an amended pleading, and he refers to Rule 15 in the body of the motion. (*See* Doc. No. 84, at 1, 2, 6.)

Typically, "[u]nder Rule 15, a court may grant permission to amend a complaint 'when justice so requires' and in the normal course will 'freely' do so." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting Fed. R. Civ. P. 15(a)). However, a party seeking leave to amend after an adverse judgment faces a heavier burden than it would in pursuing a Rule 15 motion prior to a final ruling. *Id.* at 616. Instead of meeting "only the modest requirements of Rule 15," a plaintiff seeking to amend the complaint post-judgment must "meet the requirements for reopening a case" under Rule 59 or 60. *Id.* (citations omitted).

A Rule 59(e) motion should only be granted if there was (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. *Mich. Flyer LLC v. Wayne Cty. Airport Auth.*, 860 F.3d 425, 431 (6th Cir. 2017) (citing *Leisure Caviar*, 616 F.3d at 615. Although Rule 59(e) permits a court to alter or amend a judgment, it generally "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (citation omitted).

"The grant or denial of a Rule 59(e) motion is within the informed discretion of the district court, reversible only for abuse." *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 467 (6th Cir. 2009) (citation omitted). In exercising this discretion, the court must balance the need for finality with the need to render just decisions. *Day v. Krystal Co.*, 241 F.R.D. 474, 476 (E.D. Tenn. 2007); *see also GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). Even where the adverse judgment follows from a mandate of the Court of Appeals, the decision to allow post-judgment amendments remains in the trial court's discretion unless the mandate expressly forbids amendment. *See Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir. 1986) ("Absent a mandate which explicitly directs to the contrary, a district court upon remand can permit the plaintiff to 'file additional pleadings, vary or expand the issues[.]'" (quoting *Rogers v. Hill*, 289 U.S. 582, 587–88, (1933))); *see also Youghiogheny & Ohio Coal Co. v. Milliken*, 200 F.3d 942, 950 (6th Cir. 1999) ("An appellate court's mandate . . . forecloses a lower court . . . only from revisiting issues that the appellate court actually decided." (citing *Nguyen*, 792 F.2d at 1502)).

## IV.  DISCUSSION

The only basis for the plaintiff's motion is that he should be permitted to amend his pleading to avoid manifest injustice. As set forth above, the defendant argues that the plaintiff unduly delayed in bringing his motion; that the proposed amendment would be futile, because the plaintiff's deposition testimony establishes he did not suffer cognizable injury; and, as a result, that the denial of his motion would not work any manifest injustice.

The court rejects the assertion that the plaintiff unduly delayed in seeking to amend. The defendant did not raise the standing issue until the appeal, and the Sixth Circuit's decision was largely based on *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), a decision issued in June

2021, months after the parties argued the appeal in this case before the Sixth Circuit.[1] Moreover, the plaintiff brought his motion to alter or amend judgment within the time authorized by Rule 59. The defendant's argument that the plaintiff should have filed his motion before judgment was entered in this case following remand is without merit.

### A. The Sixth Circuit's Decision

The questions of futility and manifest injustice are intertwined and require somewhat more analysis. In the Sixth Circuit's opinion directing that the case be dismissed for lack of subject-matter jurisdiction, the court described the Complaint as alleging three violations of the FDCPA, premised upon NPAS's having left Ward three telephone voice messages. Ward claimed that NPAS violated 15 U.S.C. § 1692e(11) by failing to identify itself as a debt collector on the messages; that it violated § 1692e(14) by failing to identify the "true name" of its business, because it identified itself as "NPAS" rather than as "NPAS, Inc.," as a result of which the plaintiff was "confused" as to who had contacted him and sent a "cease and desist" letter to the wrong entity, NPAS Solutions, LLC. *Ward*, 9 F.4th at 360. Third, the plaintiff alleged that, by omitting its "corporate designation in its voice messages," NPAS violated § 1692d(6) by "plac[ing] telephone calls without meaningful disclosure of [its] identity." *Id.*

The defendant argued on appeal—and the Sixth Circuit agreed—that the allegations in the Complaint failed to establish that Ward had standing to bring suit under the FDCPA, because he did not allege facts showing that he suffered "injury in fact," one of the three necessary components

---

[1] As the plaintiff points out, at the time he filed this lawsuit, and, indeed, at the time the court ruled on the Motion for Summary Judgment, the controlling law on standing to bring a claim under the FDCPA was that a plaintiff's showing that a debt collector's FDCPA violation *risked* frustrating the plaintiff in the exercise of rights created by the statute was sufficient to confer standing. *See Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 759 (6th Cir. 2018). In *Ward*, the Sixth Circuit expressly recognized *Macy*'s abrogation by *TransUnion*. *Ward*, 9 F.4th at 361.

of standing (along with showing that the injury in fact is "fairly traceable to the challenged conduct of the defendant" and is "likely to be redressed by a favorable judicial decision"). *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). The "injury-in-fact requirement includes two sub-elements: the injury must be (1) particularized and (2) concrete." *Id.* (citing *Spokeo*, 578 U.S. at 339). Because Ward alleged that NPAS's communications affected him personally, he satisfied the particularization element. The question was whether he established a "concrete" injury. *Id.* at 361.

In addressing that question, the court first considered whether the plaintiff had alleged the violation of a procedural right that was sufficient to constitute a concrete harm. Citing both *Spokeo* and *TransUnion*, the court held that NPAS's alleged violations of the FDCPA, 15 U.S.C. §§ 1692d(6), 1692e(14)[2]—by making calls without meaningfully identifying itself by its full name— standing alone, were not sufficient to establish concrete injury. To reach that conclusion, the court held that, "to establish that the statutory violations here constitute concrete injury, Ward must show that NPAS, Inc.'s failure to disclose its full identity in its voice messages resembles a harm traditionally regarded as providing a basis for a lawsuit." *Ward*, 9 F.4th at 362 (citing *TransUnion*, 141 S. Ct. at 2204). The close historical analog Ward relied on was the harm of "invasion of privacy." *Id.* The court acknowledged that American courts have long enforced the right of privacy and that, indeed, "one of the purposes of the FDCPA is to stop abusive debt collection practices that contribute to 'invasions of individual privacy.'" *Id.* (quoting 15 U.S.C. § 1692). But the court

---

[2] Section 1692d(6) states that a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," including through the "placement of telephone calls without meaningful disclosure of the caller's identity." Section 1692e(14) provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "us[ing] any business, company, or organization name other than the true name of the debt collector's business, company, or organization."

concluded that NPAS, Inc.'s mere failure to identify itself by its full name in its voice mail messages did not "closely resemble intrusion upon seclusion," as such a claim "generally requires a plaintiff to demonstrate that a defendant 'intentionally intrude[d], physically or otherwise, upon the solitude or seclusion of another or his privacy affairs or concerns.'" *Id.* (quoting Restatement (2d) of Torts § 652B (1977)).

Finding that the bare procedural violation alone was insufficient to establish standing, the court next considered whether Ward could establish standing by showing "a concrete injury that 'flow[ed] from [the] statutory violation." *Id.* at 363 (quoting *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 862 (6th Cir. 2020)) (alterations in original). Ward raised three arguments in an attempt to make that showing, but the Sixth Circuit rejected each.

First, it held that Ward's claim that he was "confused" by NPAS's failure to fully identify itself, as a result of which he sent a cease-and-desist letter to the wrong entity, failed to establish concrete injury, because "confusion alone is not a concrete injury for Article III purposes." *Id.* (citing *Garland v. Orlans, PC*, 999 F.3d 432, 437–38 (6th Cir. 2021)). Second, Ward claimed that he suffered concrete harm because NPAS's voice messages caused him to retain counsel to prevent the defendant from making further calls. The court held that "Ward cannot show concrete harm simply by pointing to the cost of hiring counsel." *Id.*

Finally, and most importantly for purposes of the motion in this court, the Sixth Circuit held that,

> to the extent that Ward argues on appeal that the harm he suffered was the single voice message he received after he sent a cease-and-desist letter to the wrong entity, he did not "clearly allege" that harm in his complaint. . . . Because Ward did not clearly assert in his complaint that he received—let alone was harmed by—an additional phone call, we need not decide whether an unwanted call might qualify as a concrete injury.

*Id.* (quoting *Spokeo*, 136 S. Ct. at 1547; citing *Gadelhak v. AT & T Servs., Inc.*, 950 F.3d 458, 463 (7th Cir. 2020)). Judge Moore dissented from this conclusion, finding that, although Ward had failed to specifically allege that he received an additional voice message after he sent a cease-and-desist letter to the wrong entity, the record, as developed through discovery, showed, as a matter of undisputed fact that Ward had received "at least one further voicemail" after he sent the cease-and-desist letter to NPAS Solutions, LLC instead of to NPAS, Inc. *Id.* at 367 (Moore, J., dissenting). Consequently, NPAS's misidentification of itself not only "created a material risk that Ward could be unable to exercise his rights under the FDCPA—specifically, his right to have NPAS cease its debt-collection efforts at Ward's request," "this risk in fact materialized when Ward sent a cease-and-desist letter under § 1692c(c) to the wrong entity." *Id.* (Moore, J., dissenting). Judge Moore concluded that "the single voicemail [Ward] received after NPAS's misidentification resembles a harm recognized under the common-law tort of intrusion upon seclusion." *Id.*

Judge Moore also engaged with the majority's conclusion that Ward's failure to include specific allegations regarding the timing of events in his Complaint was fatal to his ability to establish standing, based on the fact that he had alleged that he had sent a cease-and-desist letter to the wrong entity in December 2018, and it was undisputed on the summary judgment record that he subsequently received another call from NPAS. "Thus," Moore stated,

> even if Ward's pleadings are deficient (apparently because they do not identify the dates of the voicemails relative to the date of his letter), we should look to the whole record to assess standing, as we did in another case where standing was raised for the first time on appeal, after the plaintiff lost their opportunity to amend the pleadings.

*Id.* at 368 (Moore, J., dissenting) (citing *League of United Latin Am. Citizens (LULAC) v. Bredesen*, 500 F.3d 523, 529–30 (6th Cir. 2007)). In sum, she concluded, even if the asserted harm,

in the form of a single unwanted voicemail, seemed "trivial or insignificant," "it is concrete and that is all that we are to decide under the Court's standing precedent." *Id.*

### B.    The Plaintiff's Proposed Amendment

The proposed Second Amended Complaint does not simply add additional language regarding the relative dates of the telephone calls and the cease-and-desist letter. It substantially expands the factual allegations from twelve paragraphs covering two pages of the First Amended Complaint to forty-eight paragraphs and seven pages, presumably because it now incorporates factual details uncovered in discovery. (*Compare* Doc. No. 15 *with* Doc. No. 84-1.) However, as relevant here, it specifies the three dates on which the plaintiff received voicemails from NPAS on his telephone, at least one of which took place after the plaintiff attempted to send it a cease-and-desist letter. Further, the plaintiff alleges that, because NPAS failed to provide its complete name, the plaintiff erroneously sent his letter to NPAS Solutions, LLC, and, because NPAS never received the cease-and-desist letter, it called the plaintiff again after he sent it and despite his intent to direct NPAS to stop contacting him by telephone. (Doc. No. 84-1 ¶¶ 36, 38, 45–52.) Regarding his receipt of the third voice message, the plaintiff alleges:

> The intrusion upon Plaintiff's phone services, time, and home life greatly irritated Plaintiff because he believed that he had successfully invoked his right to be free from intrusive voice messages months earlier, and the voicemail therefore came as a nasty shock.

(*Id.* ¶ 53.)

The plaintiff asserts that the proposed amended language can come as no surprise to the defendant, because all of this information came out during discovery. He further asserts that the proposed amended language is sufficient to establish standing, because it shows that NPAS's statutory violation (the failure to correctly and fully identify itself) resulted in the plaintiff's unsuccessful attempt to send it a cease-and-desist letter and, because NPAS never received the

letter, the plaintiff suffered a concrete injury-in-fact in the form of the third unwanted telephone call. Ward argues that the majority opinion in *Ward* strongly implies that these allegations are sufficient to establish Article III standing, insofar as the Sixth Circuit cites a Seventh Circuit opinion that so found under similar circumstances, *see Ward*, 9 F.4th at 363 (citing *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 461 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 2552 (2021)), and Judge Moore's dissent expressly finds that they would be sufficient, *see id.* at 368.

In *Gadelhak*, the Seventh Circuit addressed *sua sponte* the question of the plaintiff's standing to bring a claim under the Telephone Consumer Protection Act ("TCPA"). It concluded that a complaint alleging the receipt of a "few unwanted automated text messages" made through the use of an "automatic telephone dialing system" without the prior consent of the recipient, in violation of the TCPA, 47 U.S.C. § 227(b)(1), adequately articulates "a concrete harm that Congress has chosen to make legally cognizable"[3] and, therefore, established Article III standing. *Gadelhak*, 950 F.3d at 473. The Seventh Circuit recognized that courts are split on the question, with the Second and Ninth Circuits agreeing with the Seventh Circuit that a plaintiff's "receipt of the unsolicited text messages, *sans* any other injury, is sufficient to demonstrate injury-in-fact" for purposes of Article III standing. *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 88 (2d Cir. 2019), *cert. denied sub nom. Bowes v. Melito*, 140 S. Ct. 677 (2019); *see also Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (same). More recently, the Fifth Circuit

---

[3] Finding that "residential telephone subscribers consider automated or prerecorded telephone calls . . . to be a nuisance and an invasion of privacy," Telephone Consumer Protection Act of 1991, S. 1462, 102d Cong., Pub. L. No. 102-243, § 2, ¶ 10 (1991), Congress enacted in 1991 the TCPA to restrict interstate telemarketing. Among other things, the TCPA prohibits using automatic telephone dialing systems to call residential or cellular telephone lines without the consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii), (B). It also creates a private right of action for persons or entities to seek compensatory or injunctive relief against violators. *Id.* § 227(b)(3).

has followed suit. *See Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 690 (5th Cir. 2021) (holding that the plaintiff "alleged a cognizable injury in fact: nuisance arising out of an unsolicited text advertisement" under the TCPA). Conversely, the Eleventh Circuit has held that the receipt of a "single unsolicited text message," sent in violation of the TCPA, does not constitute "a concrete injury in fact that establishes standing to sue in federal court." *Salcedo v. Hanna*, 936 F.3d 1162, 1165 (11th Cir. 2019).

Even more recently, however, the Tenth Circuit has had the occasion, post-*TransUnion*, to consider a factual pattern very similar to that presented by the plaintiff's proposed Second Amended Complaint. In *Lupia v. Medicredit, Inc.*, 8 F.4th 1184 (10th Cir. Aug. 17, 2021), the defendant received a letter from the plaintiff demanding that it cease calling her about an unpaid debt. The next day, before the defendant had actually processed the letter, it again called the plaintiff regarding the debt. *Id.* at 1187. The plaintiff brought suit under the FDCPA, alleging, among other claims, that the defendant had violated 15 U.S.C. § 1692c(c) by continuing to call her after it received her cease-and-desist letter. *Id.* at 1190. Relevant to standing, she alleged that the defendant's single call, after it received her cease-and-desist letter, caused her "to suffer intangible harms, which Congress has made legally cognizable in passing the FDCPA." *Id.* at 1190–91.

The Tenth Circuit agreed. It noted that the concrete injury of invasion of privacy was a harm "traditionally recognized as providing a basis for [a] lawsuit[ ] in American courts." *Id.* at 1191 (quoting *TransUnion LLC*, 141 S. Ct. at 2204). Although the plaintiff had not received repeated unwanted calls of sufficient "persistence and frequency" to give rise to a common-law claim, the plaintiff nonetheless "suffered a similar harm when [the defendant] made an unwanted call and left her a voicemail about a debt, despite her having sent written notice disputing the debt and requesting that it cease telephone communications." *Id.* The court concluded:

Thus, Ms. Lupia suffered an injury bearing a "close relationship" to the tort of intrusion upon seclusion. . . . This is true despite Medicredit's contentions that it made only one call to Ms. Lupia, that Ms. Lupia didn't answer that call, and that Ms. Lupia suffered no actual damages. On this point, we find *Gadelhak* instructive. That court rejected the argument that because a few text messages failed to rise to the level of an actionable intrusion-upon-seclusion tort, the resulting harm amounted to an abstract injury only:

> [W]hen *Spokeo* instructs us to analogize to harms recognized by the common law, we are meant to look for a "close relationship" in kind, not degree. In other words, while the common law offers guidance, it does not stake out the limits of Congress's power to identify harms deserving a remedy. Congress's power is greater than that: it may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law. A few unwanted automated text messages may be too minor an annoyance to be actionable at common law. But such texts nevertheless pose the same kind of harm that common law courts recognize—a concrete harm that Congress has chosen to make legally cognizable.

> So too here. Though a single phone call may not intrude to the degree required at common law, that phone call poses the same kind of harm recognized at common law—an unwanted intrusion into a plaintiff's peace and quiet.

*Id.* at 1191–91 (quoting *Gadelhak*, 950 F.3d at 462–63) (some internal citations omitted). The court, accordingly, distinguished the facts of the case before it from those in *TransUnion* to find that the plaintiff had alleged a concrete harm and had established Article III standing. The Eleventh Circuit, despite not finding standing in the context of the TCPA, *see Salcedo*, *supra*, has now followed the Tenth Circuit's lead, holding that an alleged violation of the FDCPA, specifically § 1692c(b) (by electronically transmitting "sensitive medical information" concerning a consumer's debt to a third-party vendor) "gives rise to a concrete injury in fact under Article III." *Hunstein v. Preferred Collection & Mgmt. Servs.*, No. 19-14434, 2021 WL 4998980, at *1 (11th Cir. Oct. 28, 2021)).

While the Sixth Circuit's ultimate take on this issue remains an open question, this court is persuaded by the reasoning in *Lupia* and finds that the plaintiff's amplified allegations in the proposed Second Amended Complaint would be sufficient to establish Article III standing and,

therefore, would not be futile. Ward alleges that NPAS's failure to correctly and fully identify itself gave rise to a concrete injury: because the plaintiff was unable to verify NPAS's identity, he sent a cease-and-desist letter to the wrong entity, as a result of which NPAS continued to contact him, thus invading his right to privacy.

The defendant argues that the plaintiff's lack of standing is not a "simple pleading defect," because his deposition testimony establishes that he did not pay money, detrimentally rely on NPAS's representations, suffer emotional distress, or experience an invasion of his privacy. Instead, the plaintiff testified that the "**only** damage he incurred was confusion," which the Sixth Circuit has already held is not sufficient to establish standing. (Doc. No. 86, at 1 (emphasis in original).) In making this argument, the defendant points to the plaintiff's deposition testimony in which he responded to a question about his damages. (*See id.* at 6 (quoting Ward Dep. 62–65, Doc. No. 49-1).) The court is not persuaded, largely because a lay plaintiff's understanding of what his quantifiable damages may be has little bearing on the question of whether he suffered an injury under the law sufficient to give rise to Article III standing.

In a footnote, the defendant further argues that amendment would also be futile on the basis that, separate and apart from the question of standing, the defendant has already won summary judgment on the merits. (Doc. No. 86, at 5 n.1.) Thus, even if the court permits the plaintiff to file the proposed amendment, "this would simply lead to a second summary judgment briefing process where the underlying facts have not changed in any regard since the first iteration of this case." (*Id.*) The defendant is correct: the proposed amendment will not cure the factual and legal obstacles that led to the issuance of summary judgment in the first place. That fact, however, does not make the proposed amendment futile, since the deficit in the original pleading is its failure to establish standing. The merits question is wholly separate. A conclusion that the plaintiff has standing will

permit the court to reach the merits of the plaintiff's claims. And, while the court will ultimately re-enter summary judgment for the defendant, the plaintiff will then have the opportunity to present to the Sixth Circuit the same standing arguments as those offered by the plaintiff in *Lupia* and, in addition, to present his arguments for why he should succeed on the merits. Whether the appellate court will deviate from *Lupia* and again find that the plaintiff lacks standing, as noted, is not a foregone conclusion, but the plaintiff, at the very least, has a non-frivolous basis for arguing that he has Article III standing.

## V.      CONCLUSION

For the reasons set forth herein, the plaintiff's motion (Doc. No. 84)—construed as a Rule 59(e) motion to alter or amend the Judgment and a Rule 15 motion to amend the pleading—will be granted. The court will set aside the Judgment and direct the Clerk to re-open the case and docket the proposed amended pleading as the Second Amended Complaint.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge